**J. TONY SERRA, ESQ. (CSB#32639)**
**EAN VIZZI, ESQ. (CSB#209444)**
506 Broadway
San Francisco, CA 94133
Telephone: (415) 986-5591
Facsimile: (415) 421-1331

Attorneys for Defendant
**DAMON T. RYDELL**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CASE NO.: 10-CR-0220-GEB |
| Plaintiff, | ) **NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE.** |
| vs. | ) DATE:  March 4, 2011 |
| DAMON TODD RYDELL, | ) TIME:  9:00 a.m. |
| Defendants. | ) Judge: Garland E. Burrell, Jr. |

TO HONORABLE JUDGE GARLAND E. BURRELL JR. AND THE OFFICE OF THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF CALIFORNIA:

   PLEASE TAKE NOTICE that on MARCH 4, 2011 at the hour of 9:00 a.m. or as soon thereafter as the matter may be heard in the above-entitled court, defendant DAMON TODD RYDELL by and through counsel, will and hereby does move the court for an order suppressing all evidence seized pursuant to the County of Butte Search Warrant No. 10-124, which authorized the search of Mr. Rydell's residence located at 3291 Atletas Way, City of Redding, California, as well as all law enforcement observations made and all other products and fruits of the aforementioned search warrant.

   The grounds for this motion are as follows: (1) the search warrant authorizing the search of the defendant's residence is not

1

supported by probable cause to believe that Mr. Rydell was involved in any criminal activity, and (2) there was no nexus between the crime the officers were investigating and the location to be searched (Mr. Rydell's home.)

    This motion will be based upon this notice of motion and motion, the memorandum of points and authorities and declarations filed herewith, the pleadings, files and records of this case, and such evidence as may be presented at the hearing hereby requested in this matter.

Dated: January 12, 2011    Respectfully submitted,

    _/s/ EAN VIZZI_____
EAN VIZZI
J. TONY SERRA
Attorneys for Defendant
DAMON TODD RYDELL

**STATEMENT OF FACTS**[1]

After several weeks of surveillance, on April 27, 2010 members of the Butte County Sheriff's Office Special Enforcement Unite searched the residences of codefendants Johnny Grivette and Ramon Maldonado as well as a warehouse located at 4331 Hedstrom Way, in Chico, California, pursuant to a single search warrant obtained in a marijuana cultivation investigation.  See, Search Warrant No. BSW 10-122, attached herein as Exhibit A.  The search warrant was based on an undisclosed statement by a confidential informant and observations of innocuous visits by each of the three defendants to the warehouse during the course of approximately one week (between 4/12/10 and 4/20/10) combined with the sound of "fans coming from inside the shop" and the odor of marijuana. During the execution of the search warrant at the three locations, Officers allegedly located 108 marijuana plants at the warehouse as well the presence of all three defendants.  No statements were made as all three subjects invoked their right to remain silent when questioned.  The key to the warehouse front door deadbolt was found on both defendants Grivette and Maldonado, **but not on Mr. Rydell**. All three defendants were arrested and their cellphones were seized. Additional marijuana plants (allegedly 134 plants) were discovered in Mr. Maldonado's residence.

Based on this, a second search warrant was executed the following day (April 28, 2010) at Mr. Rydell's residence.  See Search Warrant No. BSW 10-124, attached herein as Exhibit B.  The search warrant for Mr. Rydell's residence was based solely on the previous observations of Mr. Rydell during surveillance leading up to the execution of the first search warrant and Mr. Rydell's mere presence at the warehouse when the

---

[1] The facts herein are taken from the incident reports and affidavits in support of the search warrants issued in this case.  Defendant does not stipulate to the truth or accuracy of any information contained in said reports and reserve the right to present evidence at the hearing in support of this motion contesting these allegations.

first search warrant was executed.  No additional evidence was included in the search warrant for his residence connecting Mr. Rydell or his residence to any criminal activity.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE.**

**I**
**THE FOURTH AMENDMENT REQUIRES SUPPRESSION OF EVIDENCE SEIZED DURING THE SEARCH OF MR. RYDELL'S RESIDENCE LOCATED AT 3291 ATLETAS WAY, REDDING, CALIFORNIA. BECAUSE THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT FAILS TO PROVIDE A SUFFICIENT NEXUS BETWEEN THE CRIMINAL ACTIVITY AND THE RESIDENCE.**

Defendant Damon Rydell's residence located at 3291 Atletas Way in Redding was searched on April 28, 2010 pursuant to Search Warrant No. BSW 10-124. (Exhibit B.)

"[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980).  A central principle of Fourth Amendment jurisprudence is that a person may "retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961).

Probable cause is required as to each [item, place or person] to be searched pursuant to a search warrant. *Illinois v. Gates*, 462 U.S. 213 (1983).   As the Court stated in *Illinois v. Gates, supra at* 239 (emphasis added):

> "Our earlier cases illustrate the limits beyond which a magistrate may not venture in issuing a warrant. A sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises will not do.

> *Nathanson v. United States* (1933) 290 U.S. 41. An affidavit must provide the magistrate with a **substantial basis for the determining the existence of probable cause**, and the wholly conclusory statement at issue in *Nathanson* failed to meet this requirement. An officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is likewise inadequate. *Aguilar v. Texas* (1964) 378 U.S. 108. As in Nathanson, this is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. **Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.** In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on the which warrant's are issued."

The *Gates* court thus established a "totality of circumstances" test to determine probable cause. *Id.*

**A. The Affidavit In Support of the Search Warrant No. BSW 10-124 Does Not Provide Sufficient Basis to Support a Finding of Probable Cause to Search the 3291 Atletas Way Residence.**

Assuming, arguendo, that the affidavit in support of the first search warrant (for the warehouse and two codefendants' residences) signed in this case supports probable cause to search those locations, the evidence seized pursuant to that search warrant combined with the observations prior to the search simply fail to establish a nexus between the residence located at 3291 Atletas Way and the criminal activity to support a search of Mr. Rydell's residence.

The purpose of the affidavit "is to enable the appropriate magistrate ... to determine whether the 'probable cause' required to support a warrant exists." *Aguilar v. Texas*, 378 U.S. 108, 113 (1964); citing *Giordinello v. United States*, 357 U.S. 480, 486 (1958). In *Illinois v. Gates*, *supra,* at 228, the court determined that an anonymous letter, by itself, could not provide the basis for the magistrate's probable cause determination because "[t]he letter

provide[d] virtually nothing from which one might conclude that its author is either honest or his information reliable; likewise, the letter gives absolutely no indication of the basis for the writer's predictions regarding the [defendants] criminal activities." Likewise, the court in *Nathanson*, *supra*, at 47 stated that "[n]othing in these statutes indicates that a warrant to search a private dwelling may rest upon mere affirmation of suspicion or belief without disclosure of supporting facts or circumstances." The magistrate's "action cannot be a mere ratification of the bare conclusions of others." *Gates*, *supra*, at 239.

In examining the propriety of a warrant's issuance, the question is whether the facts and circumstances taken as a whole gave the magistrate probable cause to believe the desired items would be found in the search. *United States v. Rabe*, 848 F.2d 994 (9th Cir. 1988). "To establish probable cause to search a residence, two factual showings are necessary -- first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2nd Cir. 1983), citing *United States v. Harris*, 403 U.S. 573, 584; *Brinegar v. United States*, 338 U.S. 160, 173.

In the instant case, Mr. Rydell does not challenge the probable cause presented in the first affidavit supporting the search of the warehouse. The search of a warehouse where there is a suspected marijuana grow, however is a far cry from justifying the search of the residence of each and every individual who happened to be present when the search warrant was executed. There is no allegation that the confidential informant had any information about Mr. Rydell. In fact, officers did not even become aware of Mr. Rydell's identity

until they conducted a pretextual traffic stop on Mr. Rydell's vehicle leading up to obtaining the search warrant for the warehouse.[2]

The Court in *United States v. Stout*, 641 F.Supp. 1074 (N.D. CA 1986) found no probable cause to support the search warrant where the affiant presented insufficient facts to connect the criminal activity with the residence to be searched.  In that case, the affiant described a prior arrest of a Jenny Singleton arising from a traffic stop which led to law enforcement finding over 40 bindles of cocaine on her person.  The affiant then began an investigation to gather further evidence against Singleton to support possession for sale charges.  *Id.* at 1075.  The affiant proceeded to her listed address and was told by an unidentified female adult that 'Jenny' was currently living with a "Royal Stout" but that she did not know where.  After investigating the possible address for Mr. Stout, the affiant received a phone call from a DEA Special Agent (Agent Tse) who told him the following:

> "Tse had met with a confidential informant several days earlier who had told him that Stout and Singleton, also known as Jenny Morris, were residing together in Martinez at 2530 Leslie Avenue; the informant told Tse that Stout and Singleton were involved in a large scale methamphetamine and cocaine distribution network throughout the county and that he had 'recently' seen these drugs inside the Leslie Avenue residence.  Norvell made no attempt to contact or interview [the suspect].  Criminal history checks on [the suspects] revealed no prior Health And Safety Code violations.  A similar check on Stout uncovered numerous such violations."  *Id.* at 1076.

During later surveillance another officer recognized Stout there and "overheard people talking about 'Jenny.'"  *Id.*  Then the affiant drove past the residence and "saw two women enter the residence without knocking.  He recognized one of the women as Singleton, based

---

[2] This pretextual "traffic stop" is the subject of defendant's motion to suppress (Document 30) filed previously in this court to be heard on the same date as the instant motion.

7

on her booking photo." *Id.* Based on this, the affiant applied for and had approved a search warrant to search the Leslie Avenue residence and the person of Singleton for cocaine, drug paraphernalia, and documents associated with the sale of cocaine." *Id.* When officers executed the warrant, they discovered a "large quantity of methamphetamine, various drug paraphernalia and assorted documents relating to the sale and manufacture of drugs." *Id.*

Discussing the issue of probable cause to search the residence, Judge Patel stated:

> "Although the affidavit in this case contains quite a bit of detailed information and numerous references to criminal activity, closer inspection reveals that little of this information is relevant to a determination of probable cause.  There was virtually no reliable, trustworthy information indicating that Singleton resided at the Leslie Avenue address….
>
> The only other information linking Singleton to the Leslie Avenue residence was [the affiant's] 'drive-by' observation of a woman he recognized as Singleton entering the house without knocking, and [the other officer's] report that he overheard others at the house talking about 'Jenny.'" *Id.* at 1077.

The court went on to rule that the affidavit failed to provide a substantial basis for concluding that Singleton resided there and even if the affidavit "provided a 'substantial basis' for concluding that Singleton resided at the Leslie Avenue address, it provided almost no basis for concluding that evidence of the unlawful manufacture and sales of drugs would be found there." *Id.* at 1078.

The Ninth Circuit in *United States v. Ramos*, 923 F.2d 1346 (9th Cir. 1991), overruled on other grounds by *United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001) similarly held that an affidavit detailing the results of ongoing investigation of a suspected narcotics-trafficking ring asserting that an unknown suspect drove in a "counter-surveillance manner," drove to a residence and unloaded a box, engaged in other suspicious activity, and then drove back to his

apartment failed to support a finding of probable cause to search the suspect's apartment or storage area. Specifically describing that warrant which requested a search of numerous residences and vehicle, the court stated:

> "The search warrant affidavit for Ramos' apartment, storage area, and truck describes in detail the activities of a number of suspects and other individuals. Ramos is not named in the affidavit, as the investigating officers had not identified him at the time. However, Ramos is described in the affidavit as an 'unidentified male Latin[] wearing a green shirt and tan hat.' The assertions in the affidavit concerning Ramos and his residence are simply that: (1) he drove up to [residence suspected to be involved in drug trafficking] in a pick-up truck, spoke with another, and drove off in the van in a counter-surveillance manner; (2) he arrived at [another residence suspected to be involved in drug-trafficking ring] and unloaded a box which had been placed in the van by another; (3) he and another man drove the van to [Ramos's Claretta St. apartment complex]; (4) after twenty minutes, he drove the van back to the [first] house, where he left the van and drove off in the pick-up; and (5) the pick-up was registered to him, it was parked at the Claretta address, and there was a mailbox there with the name 'Ramos' on it." *United States v. Ramos*, *supra,* at 1351-52.

Of significance to the court was that

> "The affidavit contains no facts making it likely that anything the officers sought was present in the Claretta apartments. There are no allegations of anything being transported between the van and the apartment, or indeed that anybody from the van even entered the apartment. The only allegation involving Ramos and the transfer of property is that the man clad in the green shirt and tan hat was observed taking a box from the van into the Brittain house. There is no mention of cargo being loaded into, or observed within, the van at any point during Ramos' stewardship of the vehicle, or that the van was driven any differently after it left the Claretta or Brittan residences than it had been driven before, or even that Ramos was actually implicated in the enterprise and may be stashing drugs, money, or evidence at his apartment." *Id.* at 1352.

Similarly in the instant case, the affiant simply establishes no facts which would suggest that the residence at 3291 Atletas Way was used to stash drugs, money or other evidence of criminal activity. The simple fact that Mr. Rydell had happened to be present at the location at the time of the execution of the initial search warrant alone is insufficient to justify a search warrant for his residence. Mr. Rydell did not possess a key to the warehouse. No incriminating statements were elicited. The confidential informant did not indicate Mr. Rydell was involved. The search warrant requests and authorizes a full search of his residence for drugs, cash, and other detailed indicia of marijuana transactions. As the recital of facts fails to support even the inference that such items would be located within, there is simply an insufficient amount of data to support such a search.

The Tenth Circuit addressed a situation where the affiant failed to establish a sufficient nexus between the place to be searched and the criminal activity being investigated in *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005). In *Gonzales*, the affidavit of probable cause in support of the search warrant described a traffic accident in which the defendant was the driver in which he "was arrested for aggravated driving under the influence of intoxicating liquor or drugs, and transported to the hospital due to the serious injuries he sustained during the accident." After an inventory search of the wrecked vehicle, officers found a Glock 10mm magazine containing 9 live rounds, but no weapon.

> "Two days after the accident, Detective Filomeno Gonzales applied for a warrant to search Mr. Gonzales's residence for firearms and ammunition. The supporting affidavit identified '321 E. Church' as the place to be searched and detailed Mr. Gonzales's accident and the resulting inventory search. The detective also stated that he had two years of law enforcement experience and that he 'knows from Police training and experience that firearm [sic] are often kept at the residence as well as in vehicles.' However, **the affidavit never specified that 321 E. Church**

**was Mr. Gonzales's residence or that there was any other connection between that location and Mr. Gonzales, the vehicle, or the suspected criminal activity. The affidavit also failed to specify who owned the vehicle**." *Gonzales*, at 1227-28 (emphasis added).

That court stated that in that affidavit "there were no facts explaining how the address was linked to Mr. Gonzales, the vehicle, or the suspected criminal activity, or why the officer thought the items seized would be located at the residence. Rather, besides the physical description of the address, the only facts before the magistrate were that Mr. Gonzales was a convicted felon and a Glock 10mm magazine was found in a vehicle in which he was the only occupant. The only attempt at a connection was the detective's assertion that in his experience, 'firearm [sic] are often kept at the residence.'" *Gonzales*, at 1230. That court affirmed the District Court's suppression of evidence seized pursuant to that warrant because the connection between the criminal activity and the residence to be searched was "wholly absent." *Id.* at 1231.

In another circumstance, the Fourth Circuit in *United States v. Lalor*, 996 F.2d 157, 1579 (4th Cir. 1993) addressed a warrant with authorized the search of a Waverly Way residence for "cocaine, narcotics, narcotic paraphernalia, U.S. Currency, related objects and personal papers." The affidavit included information from a confidential informant describing claims about a "Jamaican John" who was involved with cocaine sales, who "lived on Waverly Way and drove a blue Dodge Daytona, with the Maryland tag, 'THUMPER'." *Id.* at 1579-80. The affidavit describes a second informant who "confirmed that Jamaican John sold cocaine …. [And that] he lived with his girlfriend in the Loch Raven Apartments, where Waverly Way is located." *Id.* at 1580. The affiant corroborated these statements by locating a blue Dodge Daytona with the tag "THUMPER" located on the 1600 block of Waverly Avenue. The next month, "a Baltimore City police officer informed [the affiant] that one day earlier she had

11

1  stopped a blue Dodge Daytona with a Maryland license plate,
2  'THUMPER'" and that the driver identified himself as "John Lalor" of
3  1572 Waverly Way", at which point the police "cited Lalor for several
4  moving violations, seized the license plate, and towed the vehicle."
5  *Id.*  The affiant then saw the blue Dodge Daytona with temporary tags,
6  later that month, parked on the 1600 block of Waverly Way. *Id.*

> "The affidavit also states that 1572 Waverly Way was rented
> to a woman, whose boyfriend, Jerry Jones, was listed as an
> apartment resident.  Jones' date of birth was the same as
> Lalor's.  [The affiant] was informed by an officer in the
> drug enforcement section that John Lalor is also known as
> Jamaican John, and that the officer was familiar with Lalor
> from a previous investigation.  On January 29, 1990, [the
> affiant] learned that Lalor had been arrested five days
> earlier for possession of a handgun and possession with
> intent to distribute cocaine.  When arrested, Lalor gave
> his address 1509 Ramblewood Road.  A review of Lalor's
> arrest record showed an additional arrest in 1989 for
> cocaine possession."  *Id.*

The court held that this affidavit "is devoid of any basis from which
the magistrate could infer that evidence of drug activity would be
found at 1572 Waverly Way.  The affidavit does not describe
circumstances that indicate such evidence was likely to be stored at
Lalor's residence."  *Id.* at 1582.

In the instant case, the only connection to the residence that
was presented on the affidavit was Mr. Rydell's presence at the
warehouse when the search warrant was executed.  Mr. Rydell did not
have a key to the warehouse, nor were any incriminating statements
obtained linking Mr. Rydell to the criminal activity.

//
//
//
//

12

**B. No Reasonably Well-Trained Officer Would Have held a Good Faith Belief that the Affidavit Supported the Magistrate's Finding of Probable Cause.**

When officers act in good faith reliance on a search warrant by a neutral magistrate but ultimately found to be invalid, however, evidence seized pursuant to such a warrant will not be suppressed under the "good faith exception" of *United States v. Leon*, 468 U.S. 897 (1984). Under the good faith exception of *Leon, supra* at 922, the Fourth Amendment does not require suppression of evidence obtained in objectively reasonable reliance on a search warrant issued by a neutral magistrate, even if the search warrant is later invalidated. The *Leon* court made clear that the government has the burden of establishing 'objectively reasonable' reliance (citation) and it described four limited situations in which such reliance would not be established, and in which suppression under the exclusionary rule would remain an appropriate remedy: (i) the issuing magistrate was misled by information that the officer knew or should have known was false; (ii) the magistrate 'wholly abandoned his judicial role'; (iii) the affidavit was " 'so lacking in indicia of probable cause' " that it would be " 'entirely unreasonable' " for an officer to believe such cause existed; and (iv) the warrant was so facially deficient that the executing officer could not reasonably presume it to be valid.

However, when a search warrant is facially deficient, the *Leon* exception will not apply to stave off the exclusionary rule. *See, e.g., Center Art Galleries-Haw, Inc. v. United States*, 875 F.2d 747, 752-54 (9th Cir. 1989), superseded by statute on other grounds as stated in *J.B. Manning Corp. v. United States*, 86 F.3d 926 (9th Cir.

13

1996) [police cannot 'reasonably' rely on a facially overbroad warrant].  'The good faith exception is not available where 'the executing officer simply could not have reasonably relied on a facially deficient warrant.'"  *United States v. Stubbs*, 873 F.2d 210, 212 (9th Cir. 1989).  *See also: United States v. Washington*, 797 F.2d 1461, 1473 (9th Cir. 1986) [holding that executing officers could not reasonably presume facially overbroad warrant to be valid.]

In the instant case, the affiant presented severely insufficient facts to establish a nexus between the criminal activity and the 3291 Atletas Way residence to be searched.  The affiant did not include this address or Mr. Rydell's name on the initial search warrant because at that point there was insufficient probable cause.  The only additional fact included in the second search warrant relating to Mr. Rydell was his mere presence at the warehouse during the execution of the first search warrant.  His mere present without more fails to rise to a level of probable cause to search his home.

## II
**ALL EVIDENCE OBTAINED AS A RESULT OF AN UNLAWFUL SEARCHES MUST BE SUPPRESSED AS TAINTED EVIDENCE; FRUIT OF THE POISONOUS TREE.**

It is well established law that evidence which is illegally obtained cannot be used, *Mapp v. Ohio*, 367 U.S. 643, 655 (1961), and that the "fruits" resulting from evidence seized or leads resulting from such evidence must also be excluded. (*Nardone v. United States*, 308 U.S. 338 (1939); *Wong Sun v. United States*, 371 U.S. 471 (1963)).

In this case the officers not only searched Mr. Rydell's residence pursuant to the facially deficient search warrant, but they also search his cellphone which was previously seized presumably pursuant to this facially-deficient search warrant.   Thus this evidence which was seized as a result of this unlawful search are

fruits of the facially-defective affidavit supporting the search warrant and all evidence obtained therefrom against Mr. Rydell must be suppressed under the "Fruit of the Poisonous Tree" doctrine.

## CONCLUSION

For the forgoing reasons, this court should grant the defendant's motion and suppress all evidence obtained as a result of the unlawful search of the Teresita Blvd. address.

Dated:  January 12, 2011        Respectfully submitted,

                                _/s/ EAN VIZZI_____
                                EAN VIZZI
                                J. TONY SERRA
                                Attorneys for Defendant
                                DAMON TODD RYDELL